## Soltani v. Degnan

*Raymond J. Quaglia,* for plaintiff.

*Ralph J. Kelly,* for defendant.

McINERNEY, *J.,* November 21, 2007—Plaintiff Mustafa Soltani appeals from the order granting defendant William Degnan summary judgment.

## I. BACKGROUND

This case centers around a fire which damaged several units at a condominium complex. The controversy concerns the manner in which the condominium association handled the subsequent insurance claims and repairs. Soltani and Degnan are fellow unit owners at Rhawnwoods Condominiums located at 2727 Rhawn Street, Philadelphia, Pennsylvania. Degnan, at all times material to the present cause of action, was the sole officer of the Rhawnwoods Condominium Association (RCA). See deposition testimony of William Degnan, p. 10. Prior to the events at issue, Degnan was the treasurer of the RCA. *Id.* During the March 8, 2005 RCA annual meeting, the president and secretary resigned due to pending sales of their respective units. *Id.* at 11. At that time, none of the other owners were willing to seek nomination to the council. *Id.* at 14. The general members requested Degnan serve as the sole manager for the RCA. *Id.* at 15.

Approximately one week later, on March 13, 2005, a fire damaged units 11, 12, 13, 14, 15, and common areas. Soltani owns units 13 and 14; he and three additional owners were affected by the fire. After the fire, a proposal was sent by an adjuster to the insurance carrier. *Id.* at 34. Degnan, on behalf of the RCA, received the initial insurance offer. Degnan told Soltani that the RCA was

planning on getting three separate requests for proposals from contractors to repair the fire damage.[1] *Id.* at 36. Degnan further told Soltani that because one of Soltani's units had the most fire damage, the RCA would choose two contractors and Soltani could choose the third. *Id.*

Degnan did not disclose any of the adjuster's figures to the contractors so that the bidding process would not be influenced by outside financial information. *Id.* The contractor Soltani chose submitted his bid two months after Degnan received the other two bids. *Id.* at 39, see also, deposition testimony of Joseph Lees, defendant's motion for summary judgment, exhibit G at 40-41. Soltani's contractor also submitted the bid at a higher cost to the RCA than the other two bids.[2] Degnan deposition at 40. The RCA selected one of the timely submitted, lower bids.

The RCA received the insurance funds and deposited them in a general account of the RCA.[3] See Degnan deposition at 44, see also, affidavit of William Degnan, defendant's motion for summary judgment, exhibit O. The contractors were paid from that general RCA account. *Id.* The repairs were eventually made and all the units became habitable once again.

---

1. Soltani did not maintain his own insurance policy for his units.

2. Soltani's contractor had been instructed by Soltani to inflate the bid to include Soltani's loss of rental income despite the contractor's protests that including those figures would make the bid too high to win the contract. Lees deposition at 18-21.

3. The RCA received three payments from the insurance carrier totaling $199,301.92. The total costs of all expenses related to the fire totaled $196,150.10. See affidavit of William Degnan, defendant's motion for summary judgment, exhibit O.

Soltani filed his complaint in the present matter[4] on December 14, 2005 with counts of conversion, negligence, breach of fiduciary duty, and abuse of process.[5] After the close of discovery, Degnan filed a motion for summary judgment. This court granted Degnan's motion for summary judgment on September 13, 2007. Soltani now files this timely appeal.

## II. DISCUSSION

Soltani raises the following issues in his appeal:

(1) This court erred in granting defendant's motion for summary judgment on the multi-count complaint because plaintiff produced sufficient evidence of facts essential to each cause of action in the complaint so as to require

---

4. The present case is not the first instance of litigation between Soltani, Degnan and the RCA. On August 29, 2005, plaintiff filed suit and filed a petition for preliminary injunction against the RCA. Court of Common Pleas, Philadelphia County, August term 2005, no. 3700. On October 31, 2005, the petition for injunctive relief was dismissed. On November 18, 2005, the RCA filed an answer and counterclaim to Soltani's complaint. The RCA alleged that it was owed back fees and assessments. The RCA also alleged that it was owed legal fees incurred as a result of the ongoing litigation. On November 18, 2005, the RCA also filed an emergency petition for injunctive relief to gain access to Soltani's unit to complete the repairs. Soltani had refused the RCA access to his unit which had slowed the restoration process for his unit and the other units and common areas affected by the fire. On November 18, 2005, the RCA's petition for a preliminary injunction was granted. On November 30, 2005, the RCA was granted a permanent injunction and Soltani was ordered to grant the RCA and its contractors access to his unit. The remaining counts in that case are on deferred status pending the outcome of the present action.

5. An amended complaint was later filed on June 26, 2006 containing more specific allegations in the negligence count.

the issues in each count to be submitted to a jury (*i.e.,* conversion, negligence, breach of contract and fiduciary duty, usurpation of the lawful authority of the condominium association, contempt of court order to account, and abuse of civil process all to the financial loss and detriment of the plaintiff).

(2) This court erred in necessarily basing its decision on the oral deposition testimony of defendant and his witnesses, which is not sufficient evidence to establish the absence of a genuine issue of material fact required for summary judgment.

(3) The defendant had the burden of proof to justify his actions and self dealing and conversion of the insurance proceeds because he was acting ultra vires as a matter of law which precludes summary judgment.

(4) The allegations in the complaint substantiated by the documents required the court to compel an election of a counsel of three unit owners to run the business of the association in accord with the condominium declaration and/or the court should have appointed a receiver for the association.

(5) The motion court erred in granting summary judgment on the abuse of process claim when the lawsuits brought against the plaintiff were a matter of record and a jury could find the defendant lied under oath and perverted the legal process by suing the plaintiff in seven different lawsuits for the expressed purpose of causing him to ratify defendant's wrongful conduct in usurping control of the association and the lawsuits were brought to "ruin" the plaintiff because of his ethnic background and not for the purpose stated in the pleadings.

See plaintiff's 1925(b) statement. Soltani's complains that this court erred by granting Degnan's motion for summary judgment on all counts of his complaint. As such, we will address each cause of action separately below. We note at the onset that summary judgment is appropriate where there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report. See Pa.R.C.P. 1035.1 et seq. (2007).

## A. *Conversion*

Conversion is an intentional interference with a plaintiff's right to use or possess his or her personal property. *Chrysler Credit Corporation v. Smith,* 434 Pa. Super. 429, 434, 643 A.2d 1098, 1100 (1994). A plaintiff has a cause of action in conversion if he or she "had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion." *Id.* (citing *Eisenhauer v. Clock Towers Association,* 399 Pa. Super. 238, 243, 582 A.2d 33, 36 (1990)). A named loss-payee on a contract for insurance has an action for conversion against the insurer if the proceeds are wrongfully distributed. *Id.* at 435, 643 A.2d at 1101.

Soltani claims that Degnan is liable for conversion because Degnan used the insurance proceeds, meant for Soltani's condominium unit, for his own personal use. However, Soltani has produced no evidence that Degnan ever deposited the insurance funds into a personal ac-

count or ever used the insurance funds for personal gain. The insurance contract between the RCA and Mitsui Sumitomo Insurance Group does not name Soltani as an insured on the policy. See insurance contract, defendant's motion for summary judgment, exhibit D. The RCA is the named payee and the insurance proceeds from the fire went directly to the RCA. Soltani cannot maintain an action for conversion because he never had a legal right to the insurance funds and he has not produced a shred of evidence that Degnan used the insurance money in any illegal manner. On the contrary, there is uncontroverted evidence that Degnan, acting on behalf of the RCA, used the insurance proceeds for the sole purpose of repairing the damaged condominium units, including Soltani's. Summary judgment on the conversion claim, therefore, was appropriate.

## B. *Negligence*

Soltani alleges Degnan was negligent in his actions following the fire. In order to prevail in a negligence claim, a plaintiff must prove (1) the defendant had a duty, (2) the defendant breached that duty, (3) a causal connection between the breach and the resulting injury, and (4) the plaintiff suffered damages. *Macina v. McAdams,* 280 Pa. Super. 115, 120, 421 A.2d 432, 434 (1980).

In this case, it is clear that Degnan owed a duty to the RCA and its members because he was the sole member of the council at the time of the fire. Soltani presents no evidence that Degnan breached this duty. Soltani specifically claims that Degnan delayed the repairs to the

damaged units, failed to reimburse Soltani for his personal losses, failed to elect a council for the RCA, and failed to allow Soltani any input into his own claim under the RCA insurance policy.

The record belies Soltani's claims. The record reflects Degnan regularly kept in contact with the unit owners through correspondence and meetings. Degnan promptly hired an adjuster and went about obtaining bids for the repair work. Other than his bold allegations, Soltani has produced no evidence to contradict or call into question Degnan's attempt to elect a three-person council for the RCA. It was no fault of Degnan's that he was unable to do so because there were no volunteers.[6] Finally, any claim that Soltani makes about having a personal claim to any of the RCA insurance proceeds is erroneous because, as noted above, Soltani never had a personal interest or legal claim to the RCA insurance funds as he was never a named insured on the policy.

Although Soltani suffered a substantial loss in the fire, it cannot be said that Degnan was the cause of that loss. The evidence of record indicates Degnan did everything necessary to get the damaged units repaired in a timely manner. Soltani's loss of rental income is irrelevant relative to the RCA because their policy did not cover such loss. Soltani was free to take out an additional insurance policy on his units but chose not to do so. Soltani's claim of negligence is without merit and summary judgment on the claim was proper.

---

6. Maybe because they did not want to open themselves up to suit such as the case before us.

## C. *Breach of Fiduciary Duty*

Soltani also claims that Degnan breached his fiduciary duty to Soltani by failing to account for the money received and fees paid, failing to properly adjust the loss from the fire, and refusing to allow Soltani to settle his own claim. A fiduciary relationship exists between two persons when one person is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship. See Restatement (Second) of Torts §874, Comment (a) (1979).

Degnan was in a fiduciary position as the sole member of the RCA council at the time of the fire. Soltani, however, failed to produce any evidence in support of his allegations that Degnan breached his duty as council member for the RCA. Degnan provided a full accounting for the insurance monies received and disbursed as a result of the fire. He promptly hired an independent, professional adjuster after the fire and continued to work with the unit owners and contractors until the fire damage was repaired. Soltani was not able to pursue a separate claim under the RCA insurance policy because Soltani was not a named insured on the policy. Soltani was free to carry a separate insurance policy on his units but chose not to do so. Soltani cannot now claim that he was entitled to direct access of the RCA insurance proceeds. The insurance funds were used properly to repair all of the damaged units. Soltani failed to produce any evidence that Degnan breached a fiduciary duty and Soltani's claim is without merit.

## D. *Abuse of Process*

Abuse of process is the use of legal process against another primarily to accomplish a purpose for which it is not designed. *Cruz v. Princeton Insurance Company,* 925 A.2d 853, 856 (Pa. Super. 2007) (citing *Werner v. Plater-Zyberk,* 799 A.2d 776, 785 (Pa. Super. 2002)). In order to prove an abuse of process claim, plaintiff must prove that defendant used a legal process against the plaintiff, primarily to accomplish a purpose for which the process was not designed, and harm has been caused to the plaintiff. *Id.*

Soltani claims that Degnan is liable for abuse of process as a result of the previous lawsuit in which the RCA successfully petitioned for injunctive relief. There is no question that seeking a petition for injunctive relief given the facts of this case is exactly the purpose for which the process was designed. Soltani brought on much of these hardships himself by refusing to cooperate with the RCA and Degnan. Soltani was interested in obtaining a cash payout after the fire from the insurance proceeds even though he was not named as an insured on the policy. Degnan was concerned with getting the damaged units repaired in a timely manner and it was Soltani who delayed the process by insisting that his contractor include loss of rental income in the bid.

Soltani also argues that this court was required to compel the RCA to elect a three-person council or to appoint a receiver for the RCA. Soltani never asked for this relief in this complaint, he sought strictly money damages. Further, as noted above, the RCA and Degnan

acted properly throughout the course of their dealings with Soltani. It would have been improper for this court to sua sponte order the RCA to hold elections. There is no valid claim for abuse of process in this case and, therefore, summary judgment was appropriate. For the foregoing reasons, this court's order granting Degnan's motion for summary judgment should be affirmed.